UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



Randee Mia Berman

_____

_____

Write the full name of each plaintiff.

25 CV 5442

(Include case number if one has been assigned)

-against-

Robert F. Kennedy, Jr.

_____

Secretary of Health & Human Services

_____

In his official capacity

_____

_____

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

**COMPLAINT**

Do you want a jury trial?
☑ Yes    ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 1/9/17

## I.   BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☑   **Federal Question**

☐   **Diversity of Citizenship**

## A.  If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?
Randee Mia Berman Docket # M-25-401. Appeals # 3-14185166885

SEE ATTACHED

## B.  If you checked Diversity of Citizenship

### 1.  Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , _____ , is a citizen of the State of
                          (Plaintiff's name)

_____
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

If the defendant is an individual:

The defendant, _____, is a citizen of the State of
               (Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or
subject of the foreign state of

_____.

If the defendant is a corporation:

The defendant, _____, is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____.

If more than one defendant is named in the complaint, attach additional pages providing
information for each additional defendant.

## II.  PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional
pages if needed.

| Randee | M | Berman |
|---|---|---|
| First Name | Middle Initial | Last Name |

328 West 11th Street. #2H
_____
Street Address

| New York, New York | N.Y. | 10014 |
|---|---|---|
| County, City | State | Zip Code |

| 917-923-1791 | randeemia@aol.com |
|---|---|
| Telephone Number | Email Address (if available) |

## B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:     Robert F.                    Kennedy Jr.
_____
                 First Name                   Last Name
                 Secretary, Health & Human Services
_____
                 Current Job Title (or other identifying information)
                 200 Independence Ave. SW
_____
                 Current Work Address (or other address where defendant may be served)
                 Washington              DC              20201
_____
                 County, City                 State           Zip Code

Defendant 2:     _____
                 First Name                   Last Name

                 _____
                 Current Job Title (or other identifying information)

                 _____
                 Current Work Address (or other address where defendant may be served)

                 _____
                 County, City                 State           Zip Code

Defendant 3:     _____
                 First Name                   Last Name

                 _____
                 Current Job Title (or other identifying information)

                 _____
                 Current Work Address (or other address where defendant may be served)

                 _____
                 County, City                 State           Zip Code

Defendant 4: _____

First Name                    Last Name

_____

Current Job Title (or other identifying information)

_____

Current Work Address (or other address where defendant may be served)

_____

County, City                   State              Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence:  New York City

_____

Date(s) of occurrence:  March, 2021 - Present

_____

## FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

SEE ATTACHED

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

## IV. RELIEF

State briefly what money damages or other relief you want the court to order.

SEE ATTACHED

## V.  PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| June 26, 2025 | *June 26, 2025* | *Randee Mia Berman* |
|---|---|---|
| Dated | | Plaintiff's Signature |

| Randee | M. | Berman |
|---|---|---|
| First Name | Middle Initial | Last Name |

328 West 11th St. Apt 2H

Street Address

| New York, N.Y. | N.Y. | 10014 |
|---|---|---|
| County, City | State | Zip Code |

| 917-923-1791 | randeemia@aol.com |
|---|---|
| Telephone Number | Email Address (if available) |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☑ Yes    ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

# COMPLAINT FORM. ATTACHMENTS

Randee Mia Berman

Docket Number: M-25-401

ALJ Appeal Number: 3-14185166885

# I.   BASIS FOR JURISDICTION/

What is the basis for federal-court jurisdiction in your case?
x Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

The Medicare Appeals Council erroneously determined that my prescription medication for treatment of lichen sclerosus is not a covered Part D drug, even though my doctor has determined that it is medically necessary. I am bringing this case pursuant to 42 U.S.C. § 1395w- 104(h)(1) and 42 C.F.R. § 423.2136. This statute and regulation grant me the right to have a federal district court review the decision of the Council. Per 42 C.F.R. § 423.2136, I have filed in the judicial district in which I reside, filed within 60 days of receiving the Council's decision, and named the Secretary in his official capacity as the defendant. Jurisdiction is therefore proper.  The Medicare Appeals Council Docket Number is M-25-401.  The ALJ Appeal Number is 3-14185166885.

# COMPLAINT FORM. ATTACHMENTS

Randee Mia Berman

# III. STATEMENT OF CLAIM

# FACTS:

1. This Facts section pertains to a decision by the Medicare Appeals Council, Docket Number: M-25-401; ALJ Appeal Number: 3-14185166885.

2. This Facts Section will cover the entire time period where Medicare has denied coverage of Estriol medication, from July 2021 – present.

## Part 1 – BACKGROUND

3. I am a 71-year old woman with a history of horrible migraines since 9/11/01 (I've been treated for migraines, sinusitis, rhinitis, and asthma, since I lived and worked downtown).  I've been in the E.R. six times in the last eight years for diverticulitis.  I am extremely sensitive and

allergic to additives in medicines (e.g. gelatin, dyes and propylene glycol – which trigger migraines).

4. On June 18, 2019, I saw Dr. Sophie Yu at Weill Cornell (not my usual Ob Gyn doctor) for enormous pelvic pain. Urinating was so painful I felt like I was peeing right through a paper cut. She advised external steroid Triamcinolone for one week to calm down skin and Estrace/Estradiol vaginal cream.

5. On June 20, 2019, nurse Amy Lam from Weill Cornell called me. Cultures were negative for herpes and Zoster. She suggested one week of Triamcinolone to calm down the skin, followed by Estradiol cream (Estrace) insert .01 mg for 3 days, then 2x/week for 1 week. I tried the Estradiol, a very potent form of estrogen. It created major migraines. Strong steroids can also create thinning of skin.

6. On June 26, 2019, I saw my regular dermatologist, Dr. William Long, for a full body check.  He examined my vaginal area and it seemed clear.  He didn't see the need for Estradiol cream.

7. On June 26, I called nurse Amy to ask if I should take estrogen cream. I told her I'd seen my dermatologist Dr. Long and he didn't see the need for Estradiol.

8. On June 28, 2019, Kamilla (nurse) called me back. If I had no symptoms I didn't need to take the Estradiol. I did not prefer taking it anyway because of the migraine issue it caused.

9. On July 1, 2019, I saw Dr. Szylvia Nagy, my OB/GYN for many years. She advised taking triamcinolone for a week, then Estradiol. I did not use Estradiol because it created headaches.

10.    On March 6, 2021, I had blisters on my pelvic area, was swollen, was in major pain, and could hardly walk or urinate. This continued for months.

11.    On March 11, 2021, I saw Dr. Szylvia Nagy, my regular Weill Cornell OB/GYN. She observed large sores on the vulva lip, swelling and inflammation on the vulva. She took painful cultures (Herpes Simplex; Mycoplama Hominis/Ureaplasma culture; genital culture), advising alternating Sitz baths, witch hazel, Epsom salt baths, Emu-Aid, Lidocaine and Dermoplast. She also prescribed Valtrax in case of herpes (I stopped taking it because it was not herpes). She said to stop taking Triamcinolone and Estradiol. She did not realize my situation was this bad.

12.    On March 17, 2021, I saw my dermatologist Dr. William Long, who observed swelling and a very inflamed vagina.  He did a needle biopsy, gave me a cortisone shot,

prescribed Traimcinolone, and Oxicodone with

Acetaminophen. The triamcinolone seemed to cause more

inflammation.

13.    On March 19, 2021, Dr. Long suggested Cortisone or

Prednisone pills, as well as a combined

Lidocaine/Prilocaine cream.

## PART # 2 – DIAGNOSIS & TREATMENT

14.    On  March 24, 2021, I was diagnosed with Bullous

Lichen Sclerosus (LS), a chronic condition that causes then,

white patches of skin, inflammation, burning, soreness,

blotches, blisters and pain.

15.    On March 25, 2021, I was prescribed Betamethasone

cream and Prednisone. They were not working.

16.    On March 30 and 31, 2021, I had continued pain, a

rash on my inner thigh, itching, and inflammation.  I was

very ulcerated. I was prescribed another week of Prednisone.

17.    On April 4, 2021, I contacted a homeopath because I was desperate and open to other treatments. I started essential oils (fractured coconut oil with frankincense) but stopped because my skin was too sensitive and it stung a bit. My urinating was extremely painful to the point of causing me to cry every night. I took Lidocaine/Prilocaine and Aquaphor. Because my migraines were increasing from the stress and lack of sleep from the Lichen Sclerosus, I also took Imitrex nasal spray. The burning and inflammation were unbearable.

18.    On April 13, 2021, Dr. Long observed white patches, and the inflammation was only 20% down. He referred me to a vulva specialist. I took Betamethasone and Prednisone for another week.

19.     On April 14, 2021, I took strong BLT numbing cream, then stronger Lidocaine and tetracaine.  The pain was agonizing.

20.     On April 21, 2021, Dr. Long advised me to stop the steroid creams because the patches were still there, and the skin was thinning.

21.     On April 28, 2021, I saw specialist Dr. Miriam Pomeranz, who observed the Lichen Sclerosus, which was extremely ulcerated and inflamed.  She said due to the Lichen Sclerosus and Atrophic Vulvovaginitis, I might need topical estrogen.  She prescribed Betamethasone Diproprionate (stronger than Betamethasone augmented). She said I'd probably be on topical steroids for my lifetime as part of a treatment plan. She advised stopping all oils and bacitracin.  I was using Zing Oxide cream to protect and soothe my ultra-sensitive skin.

22.    On May 1, 2021, mu pain was still very high.

23.    On May 5, 2021, Dr. Long prescribed Gentamycin

antibiotic.

24.    On May 12, 2021, Dr. Pomeranz observed that the

ulcers were still there.  She prescribed Fluocinolone and

Fluconozole.

25.    On May 17, 2021, I saw Dr. Lona Prasad, OB/GYN,

Weill Cornell.  She agreed that it was a bad case of LS.

26.    On June 2, 2021, Dr. Pomeranz did a biopsy on my

left thigh with silk stitches.  She prescribed Clobetasol and

Flucanozole.

27.    Dr. Long suggested a pain management doctor.

28.    On June 9, 2021, Dr. Pomeranz saw red patches.

29.    On June 15, 2021, I had a consultation about using a

Nerve Block for pain management with Dr. Meera

Kirpekar, NYU.

30.    On June 16, Dr. Pomeranz removed the stitches.

31.    On July 14, 2021, I was admitted to Lenox Hill

Hospital E.R. for diverticulitis.

32.    On July 19, 2021, I saw Doctor Elizabeth Poynor,

OB/GYN specialist.  I was so inflamed that she could not

do a proper exam or pap smear; it was too impossibly

painful.  She observed major inflammation in the Posterior

Vulva.

33.    On July 19, 2021, Dr. Poynor prescribed topical

Estriol with testosterone in castor oil for inflammation.

After many cancelled appointments due to Covid, in

March, 2022, she prescribed Estriol vaginal cream.

34.    As if I didn't have enough pain and problems my hair

began thinning (a potential result of testosterone).

35.    On April 6, 2022, Dr. Long did a scalp biopsy. Biopsy

found some frontal alopecia hair thinning.

36.     The estriol emulsion with testosterone in castor oil and the estriol cream were working. I was also taking topical corticosteroids which thin the skin.  After so many medications, steroids, painkillers, and oils, the estriol seemed to be a godsend.

37.     The Estriol was ordered through Healthy Choice pharmacy.  Pharmacist Phil Altman explained that Estriol is the *mildest form of estrogen*.  My Medicare insurance plan claimed that *estriol is not covered* under Medicare Part D. Estradiol is a very strong form of estrogen and *is covered* by Medicare Part D.

## PART # 3 – CLAIMS & DENIALS

38.     On April 7, 2022, Dr. Poynor submitted a claim for the estriol. I spoke to Silverscript about submitting a claim for the estriol/testosterone/castor oil emulsion, which was

approximately $65.00 month + shipping, and for the prescribed vaginal estriol cream

39.    On April 8, 2022, the estriol claim was denied. Sara in Dr. Poynor's office appealed.  On April 10, 2022, there was a message of denial.  On April 12, 2022, Dr. Poynor had to use a tiny speculum for internal exam. Dr. Poynor did a blood test for testosterone.  The amount of testosterone used to treat lichen sclerosus in the estriol compound was low, but she said I might be sensitive to testosterone.  In August, 2022, she took the testosterone out of the compound going forward.

40.    On March 17, 2023, Dr. Poynor's office informed me that Dr. Poynor was opting out of Medicare.  That would mean I would have to pay out of pocket for doctor's visits as well as for the Estriol.

41.     I am on a fixed income and the cost of Estriol per month is prohibitive. I have been taking topical Estriol compound for four years (July 2021 – July 2025) and the Estriol internal cream for three years (March 2022 – June 2025). The topical compound is $65.00/month + $10.00 shipping; the Estriol internal cream compound is $95.10 per order.

42.     I obtained a *Letter of Medical Necessity* from Dr. Poynor for Estriol a specific hormone for treating Lichen Sclerosus.

43.     Dr. Poynor opted out of Medicare in March 2023. She transferred the prescriptions to my vulva dermatologist specialist, Dr. Miriam Pomeranz. Dr. Pomeranz remains in Medicare and continues to prescribe the estriol compound to me because it is medically necessary.

44.    I have continued taking Estriol with Castor Oil (and testosterone originally) for external application (July 2021 – July 2025).

45.    I have continued taking Estriol Vaginal Cream for internal application (March 2022 – present).

46.    I am currently taking both.  The alternatives to Estriol medications (e.g. Estrace and Vagifem) contain many additives which cause adverse reactions, including migraines.

47.    Estrace, which is the FDA approved commercial product, a lab-made form of estradiol, has assorted additives and preservatives including propylene glycol, white ceresin wax, corn starch, magnesium stearate (which can cause hair thinning), and color additives (FD & C blue no. 1 aluminum lake and D&C red No. 27 aluminum lake), FD &C yellow no. 5 (Tartrazine) aluminum lake.

48.     I took Estrace years ago and had a bad reaction with

migraines. I cannot take Estrace nor do I want to take

additional preservatives.  Estriol with castor oil is pure.

49.     Vagifem (estradiol vaginal inserts) contain lactose

monohydrate (creates digestive issues for me), maize starch

and magnesium stearate, which can cause hair thinning.

50.     I have continued taking Estriol through 2023. The cost

is also prohibitive every month.

51.     The cost of estriol with castor oil/testosterone: $65.00

+ $10.00 shipping

52.     The cost of estriol vaginal cream is $95.10.

**PART # 4 – LEVELS OF APPEAL & DENIAL**

**53.     Level 1 COVERAGE & DETERMINATION**

On February 16, 2024, Empire Plan/Silverscript denied

coverage of estriol powder.  The reasoning was that "in

order for a drug to be considered for coverage under

Medicare Part D, a drug must meet the definition of a Part

D drug. A Part D drug may be dispensed only by

prescription and is being used for a medically-accepted

indication. The compound must contain at least one

ingredient that meets the definition of a Part D drug. The

requested compounded medication does not contain any

ingredients that meet the definition of a Part D drug." (But

testosterone was one of the ingredients).

54.    On April 17, 2024, Empire Plan/Silverscript informed

me that estriol coverage was denied. They said the first one

was in February 2024 and the second denial was April

2024. The Determination said that the medicine cannot be

covered under Medicare Part D plan. The reason: to be

covered, the medication must include one ingredient that

meets the definition of a Part D drug….and that this does

not meet the definition.   When I called Empire

Plan/Silverscript number (877-769-7447), I was told that it

*could be approved* based on medical necessity, based on the

provider's reponse.  (I did get a Letter of Medical Necessity

– see below, June 24, 2024).

55.      On April 15, 2024, I called Empire Plan/Silverscript.  I

spoke with Monica, who said I can't file an appeal on the

phone.  But the letter said that I *could* appeal by phone.

She said I had 60 business days.

56.      Monica switched me to Ramona in Prescriptions and

told me to call their compounding pharmacy.

57.      Ramona switched me to Brian in Care Exception

Review (CER). Brian put through a file for appeal by

phone. He said if it was denied, theu will send a letter on

how to get coverage.  He clarified that I had until April 18,

2024 (60 *calendar* days, *not* 60 *business* days, as I'd been

told earlier.

58.    On April 17, 2024, I received a

REDETERMINATION NOTICE DENIAL of Medicare

Prescription Drug Coverage of Estriol Powder. (The estriol

powder is the estriol used in both the emulsion compound

and the vaginal cream prepared by Healthy Choice

pharmacy).

59.    On April 17, 2024, I received a RESPONSE TO

INQUIRY letter from NYS Empire Plan.  As explained in

the Notice of Redetermination, my request to appeal a

redetermination denial could not be processed.  My 2nd level

appeal request should now go to C2C Innovative Solutions.

60.    On May 24, 2024, I called Silverscript.  They said the

denial was based on the fact that there is no ingredient in

the estriol compound that is on the formulary for Part D.

But testosterone (originally in the compound) is on the list.
They suggested trying Part B.  I called 800-633-4227. I was
told that Part B does not cover estriol either.  But no one
could even tell me how to access the Formulary.

61.    On May 24, 2024, I got a phone message from CVS
Caremark.

62.    On May 27, 2024, I received a letter (duplicate of
April 16, 2024 letter) from Empire Plan saying they could
not process my claim ("your request to appeal a
redetermination denial cannot be processed by us."  My
next step was that I now had to go to C2C Innovative
Solutions.

**63.    <u>Level 2 Appeal: C2C REDETERMINATION</u>**

On June 12, 2024, I sent a letter to C2C Innovative
Solutions.  In my letter I stated that I didn't have a case
number yet, but I understood that my appeal had gone from

Caremark Silverscript to C2C. I mentioned that my doctor had prescribed Estriol as the best choice for my extremely painful illness of Lichen Sclerosus.

64.      On June 19, 2024, I received a letter from C2C saying my appeal decision was UNFAVORABLE. It stated that Estriol Powder was prescribed for an unknown diagnosis. I have a right to appeal and have rights to a hearing with an Administrative Law Judge.

65.      June 24, 2024 – I received Dr. Elizabeth Poynor's Letter of Medical Necessity.

**66.      Level 3 Appeal:  ALJ HEARING**

On July 3, 2024, I called the OMHA (Office of Medicare Hearings and Appeals).

67.      On July 9, 2024, I spoke with Ilda Yanko at OMHA.

68.      I received an Order Denying Request to Expedite, dated July 9, 2024.

69.    I received a Notice of Hearing for August 8, 2024 at

9:00 am for an Administrative Law Judge Hearing with

Judge Ryan Glaze.

70.    On August 8, 2024, I represented myself in an

Administrative Law Judge Hearing with Judge Ryan Glaze.

71.    On September 17, 2024, I was denied in a decision by

Administrative Law Judge Ryan Glaze.

Judge Ryan Glaze gave an UNFAVORABLE Decision,

based on the fact that the compounded medication does not

contain at least one ingredient that meets the definition of a

Part D drug.

72.    This is a very restrictive interpretation of a medically

accepted indication.  Medicare should consider a broader

interpretation of definition of Part D drugs and of coverage

for off label medication.

73. **Level 4 Appeal: MEDICARE APPEALS COUNCIL**

On November 18, 2024, I requested an EXPEDITED Office of Medicare Hearings & Appeals (OMHA) Appeal.

74. I was given Docket # M-25-401 and ALJ Appeal #3-14185166885.

75. On November 26, 2024, I received a denial by NYS Empire Plan/Civil Service. It stated denial of coverage under Medicare Part D benefit for Estriol powder, which is contained in both the emulsified compound and the vaginal cream compound.

76. I was not sure if this was a duplicate denial from February and April 2-24 (above) or which appeal this pertained to, but I had not heard back from the OMHA.

77. In January, 2025, I called the Medicare Appeals Council because I still had not heard back. I was told that a

denial had been sent out, dated December 3, 2024. I never received that original denial letter.

78.     The December 3, 2024 OMHA Medicare Appeals Council denial was based on a rather rigid exclusion of coverage. The Plan is not required to cover the drug because it is statutorily excluded from Medicare Part D Coverage. The denial referred to the following facts; one issue is approval of estriol powder compound, and IRE (Independent Review Entity) specified that bulk powders are excluded from coverage under Medicare Part D. None of the ingredients contained with the compounded drug satisfy the definition of a Medicare Part D drug, so the compounded drug was not eligible for coverage.

79.     This is a very restricted interpretation of what defines a Part D Drug, especially if medically necessary.

80.    One of the ingredients (testosterone) of one of the

estriol compounds I believe *is covered* by Part D.  So the

decision may be partially *incorrect*.

81.    The Medicare Appeals Council did not check any of

the three authoritative compendiums that play a crucial role

in helping CMS determine whether a treatment is

reasonable and necessary.  These three compendiums are

AHFS-DI; USP-NF; and DRUGDEX, which I

unfortunately cannot access. Estriol may be listed on at

least one of the compendiums.  If that is true, and Estriol is

medically accepted, then it might still qualify as a Part D

drug.

82.    On January 16, 2025, I requested a Formulary

Exception Appeal because I need the estriol.

83.    On January 18, 2025, the NYS Empire Plan denied in

a REDETERMINATION NOTICE.  They agreed with their

initial coverage determination and denied coverage of

Estriol Powder.

84.    On February 14, 2025, I sent a letter to the Medicare

Appeals Council requesting a time extension of my appeal

file deadline since I *never received the denial letter* dated

December 3, 2024.

85.    On February 25, 2025, I received a letter from NYS

Dept of Civil Service regarding CVS, Silverscript, Healthy

Choice and Alternative Pharmacy Suggestions.

86.    They suggested four other compounding pharmacies

to contact to obtain compounds, but when I called them, I

found that none of them sold compounds.

87.    They also suggested I file a claim with WRAP

supplemental benefit. That was not applicable.

88.    On April 26, 2025, I received a letter from the

Medicare Appeals Council with the original denial letter

dated December 3, 2024 (which I'd never received) along with the ORDER OF MEDICARE APPEALS COUNCIL GRANTING EXTENSION OF TIME (see attached) signed by Cristina M. Prelle, Administrative Appeals Judge, dated April 25, 2025.

89.     The OMHA extended my filing deadline with Federal District Court for 60 days starting April 30, 2025.

90.     **Level 5 Appeal – FEDERAL DISTRICT COURT**

Being filed on June 30, 2025

Docket # M-25-401.    Appeal #: 3-14185166885

## SUMMARY:

1. Estriol is necessary for my medical well-being.  After trying many other medications, Estriol compound, in conjunction with zinc oxide and fluocinolone, helps me feel like a normal functioning human being.

2. Alternatives to estriol (Estradiol/Estrace), which are covered, are not good options for me, due to the preservatives and additives which create negative reactions.

3. Testosterone, originally an ingredient in the compound, *is covered* by Medicare, so the denial is not accurate.

4. The Medicare Appeals Council did not check any of the a compendiums (AHFS-DI; USP-NF: and DRUGDEX), which I cannot access.  Estriol may be listed on at least one of the compendiums.  If that is true, and Estriol is medically accepted, it might still qualify as a Part D drug.

===============================================

Randee Mia Berman

Docket # M-25-401.    Appeal #: 3-14185166885

# COMPLAINT FORM.  ATTACHMENTS

Randee Mia Berman

## IV.  RELIEF

### 1. MONEY DAMAGES:

I am seeking reimbursement of ESTRIOL medications:

Estriol compound castor oil/testosterone

$65/mo. July 2021 – July 2025

48 mos. @$65/mo = **$3,120.00**

Estriol compound Vaginal Cream $95.10/order

March 2022 – June 2025

$95.10 x13 orders = **$1,236.30.**

### 2. DECLARATORY RELIEF: Going forward I request a

Court Order that supports Medicare Part D coverage of

ESTRIOL medication.

 **DEPARTMENT OF HEALTH & HUMAN SERVICES**    Office of the Secretary

Departmental Appeals Board, MS 6127
Medicare Appeals Council
330 Independence Avenue
Cohen Building, Room G-644
Washington, DC 20201
(202)565-0100/Toll Free:1-866-365-8204

Docket Number: M-25-401
ALJ Appeal Number: 3-14185166885

Randee Mia Bermen
328 West 11th St. #2H
New York, NY 10014

## NOTICE OF ACTION OF MEDICARE APPEALS COUNCIL

<u>What This Notice Means</u>

Enclosed is a copy of the action of the Medicare Appeals Council. If you have any
questions, please call the staff in the Medicare Operations Division at 1-866-365-8204.

This notice and enclosed order were mailed on _____April 25, 2025_____.


Enclosure

cc:  SilverScriptInsurance Company

DEPARTMENT OF HEALTH AND HUMAN SERVICES
DEPARTMENTAL APPEALS BOARD
**Medicare Appeals Council**
**Docket No. M-25-401**

R.B., Appellant
OMHA Appeal No. 3-14185166885

## ORDER OF MEDICARE APPEALS COUNCIL
## GRANTING EXTENSION OF TIME

On December 3, 2024, the Medicare Appeals Council (Council) issued a decision in this case. By letter dated February 14, 2025, the appellant requested an extension of time for filing an action in federal district court because they did not receive a copy of the Council's decision which was sent to an incorrect address. In the request, the appellant asks the Council to extend the time for filing. The Council grants the time for filing a civil action for a period of **60 days from the date of receipt of this Order**. 42 C.F.R. § 423.2134; *see also id.* § 405.942(b)(2). The date of receipt shall be presumed to be <u>five days from the date of this Order</u> unless a reasonable showing is made to the contrary. Please include a copy of this Order with your civil complaint.

Enclosed is a copy of the Council's decision in M-25-401.

**MEDICARE APPEALS COUNCIL**

Cristina M. Prelle
Administrative Appeals Judge

Date: _____ April 25, 2025 _____



**DEPARTMENT OF HEALTH & HUMAN SERVICES**    Office of the Secretary

Departmental Appeals Board, MS 6127
Medicare Appeals Council
330 Independence Avenue
Cohen Building, Room G-644
Washington, DC 20201
(202)565-0100/Toll Free:1-866-365-8204

Docket Number: M-25-401
OMHA Appeal Number: 3-14185166885

Randee Berman
328 W. 111th St.
Apt. 2H
New York, NY 10014

## NOTICE OF DECISION OF MEDICARE APPEALS COUNCIL

<u>What This Notice Means</u>

Enclosed is a copy of the decision of the Medicare Appeals Council. If you have any
questions, you may contact the Centers for Medicare & Medicaid Services regional office
or the local Medicare contractor.

<u>Your Right to Court Review</u>

If you desire court review of the Council's decision and the amount in controversy is
$1,840 or more (or $1,900 or more for civil actions filed on or after January 1, 2025), you
may commence a civil action by filing a complaint in the United States District Court for
the judicial district in which you reside or have your principal place of business. *See*
§ 1860D-4(h)(1) of the Social Security Act, 42 U.S.C. § 1395w – 104(h)(1); 42 C.F.R.
§ 423.1976. The complaint must be filed within sixty days after the date this letter is
received. 42 C.F.R. § 423.2130. It will be presumed that this letter is received within five
days after the date shown above unless a reasonable showing to the contrary is made. 42
C.F.R. § 423.2136(c)(2).

If you cannot file your complaint within sixty days, you may ask the Council to extend the
time in which you may begin a civil action. However, the Council will only extend the
time if you provide a good reason for not meeting the deadline. Your reason must be set
forth clearly in your request. 42 C.F.R. § 423.2134.

2

If a civil action is commenced, the complaint should name the Secretary of Health and Human Services as the defendant and should include the Council's docket number and ALJ appeal number shown at the top of this notice. 42 C.F.R. § 423.2136(d). The Secretary must be served by sending a copy of the summons and complaint by registered or certified mail to the General Counsel, Department of Health and Human Services, 200 Independence Avenue, S.W., Washington, D.C. 20201. In addition, you must serve the United States Attorney for the district in which you file your complaint and the Attorney General of the United States. *See* rules 4(c) and (i) of the Federal Rules of Civil Procedure and 45 C.F.R. § 4.1.

This notice and enclosed order were mailed on: <u>April 25, 2025</u>.


Enclosure

cc:  Silverscript Insurance Company
     C2C Innovative Solutions, Inc.

DEPARTMENT OF HEALTH AND HUMAN SERVICES
DEPARTMENTAL APPEALS BOARD
**Medicare Appeals Council**
**Docket No. M-25-401**

R.B., Appellant
OMHA Appeal No. 3-14185166885

## DECISION

The Administrative Law Judge (ALJ) issued a decision dated September 17, 2024, concluding that the enrollee-appellant's (appellant's) Medicare Part D prescription drug plan (Plan) was not required to pre-approve coverage the appellant for the estriol powder, compounded into a solution requested on February 14, 2024, because the compounded drug at issue was made from a bulk pharmaceutical powder and thus did not meet the definition of a Medicare Part D drug.

The appellant filed a request for review, seeking Medicare Appeals Council (Council) review of the ALJ's action.  The Council enters the request for review into the record as Exhibit (Exh.) MAC-1[1].  The Council reviews the ALJ's decision *de novo*.  42 C.F.R. §§ 423.2100(b), 423.2108(a).

For the reasons set forth below, the Council adopts the ALJ's decision.

## DISCUSSION

After carefully considering the record, including the hearing audio file and the contentions raised in the appellant's request for review, the Council agrees with the ALJ that the Plan is not required to cover the drug at issue because it is statutorily excluded from Medicare Part D coverage.

At issue in this appeal is pre-approval of estriol powder compound, which the appellant's physician prescribed for treatment of Lichen Sclerosis.  File 3 at 6; File 8.  The Plan and Independent Review Entity (IRE) denied the request because neither the compounded drug, nor any of the ingredients contained within the drug, satisfied the definition of a Medicare Part D drug.  File 2; File 3 at 9, 22.  The IRE specified that bulk powders are excluded from coverage under Medicare Part D coverage.  File 2.

---

[1] The request for review seeks expedited review, which we deny.  *See* 42 C.F.R. § 423.2108(d); *see also* Exh. MAC-1.

Following a hearing, the ALJ issued an unfavorable decision finding that the Plan was not required to pre-approve coverage for the estriol powder at issue. Decision (Dec.). Specifically, the ALJ found that, because none of the ingredients contained within the compounded drug satisfy the definition of a Medicare Part D drug, the compounded drug was not eligible for coverage. *Id.* at 2-4. Further, the ALJ concluded that the drug was not covered because estriol is a bulk powder that does not satisfy the definition of a Part D drug pursuant to the Medicare Prescription Drug Benefit Manual (MPDBM). *Id.* at 3. The ALJ also determined that castor oil, the second component of the compounded drug, was not a Part D drug. *Id.* Thus, the ALJ determined that the Plan did not have to pre-approve coverage of the compound.

Before the Council, the appellant does not dispute that the drug is covered by Medicare Part D. Exh. MAC-2. Rather, the appellant contends that the compounds, including the estriol bulk powder, should be covered by Medicare Part D for the indication they are using the drug itself, as it has been beneficial to them. *Id.* Additionally, the appellant contends the compounded drug is medically reasonable and necessary according to their physician who sent a letter of medical necessity. *Id.* Finally, the appellant contended they that were unable to afford the drug without approval from their Medicare Part D Plan. *Id.*

The statute and regulations make clear that the definition of a Part D drug, for purposes of Medicare prescription drug plan coverage, includes only prescription drugs that are FDA-approved under §§ 505, 505(j), or 507 of the Food, Drug, and Cosmetic Act, or are exempt from the FDA approval process through a "grandfathering" provision. Bulk pharmaceutical powders are not subject to the FDA approval process of these particular sections. Thus, bulk powders are not covered by Medicare Part D even if they serve a useful purpose for a Medicare beneficiary who cannot take an FDA-approved drug for medical or financial reasons. Under § 1927(k)(2)(A) of the Act, Congress limited coverage under Part D to drugs which are approved by the FDA under the three limited sections, as well as to certain "grandfathered" (pre-1962) drugs (subsection (k)(2)(A)(ii)) and for drugs for which there is a "compelling justification for its medical need" subject to the Secretary's actions (subsection (k)(2)(A)(iii)), however, none of these provisions are applicable here.

Moreover, for purposes of Part D coverage, CMS has stated that compounded products *as a whole* do not satisfy the definition of a "Part D drug" and are thus not covered by Medicare Part D even if the compounded drugs are available through a pharmacy, as in this case. *See* Medicare Prescription Drug Benefit Manual (MPDBM), CMS Pub. 100-18, Ch. 6, § 10.4 (Rev. 18, Effective January 15, 2016) ("Bulk powders (i.e., Active Pharmaceutical Ingredients for compounding) do not satisfy the definition of a Part D drug and are not covered by Part D."). CMS has determined that extemporaneous compounds made from bulk powders in the compounding process are not approved drugs

3

for the purposes of Medicare Part D because they are not prescription drug products approved under §§ 505, 505(j), and 507 of the Food, Drug, and Cosmetics Act.

In this case, there is no dispute that the drug at issue was prescribed as a product for compounding. *See* Hearing CD; File 8; Exh. MAC-1. The compound at issue contains estriol powder and castor oil. Hearing CD; Exh. MAC-1. As estriol powder is an active pharmaceutical ingredient for compounding, the Estriol powder at issue is a bulk powder that does not satisfy the definition of a Part D drug. *See* MPDBM, Ch. 6, § 10.4. The Plan's 2024 Evidence of Coverage (EOC) provides that the Plan only covers drugs that are covered under Medicare Part D and informs enrollees that they are responsible to pay for drugs that are excluded from coverage. File 2 at 95, 106-07. As the drug at issue is a compounded drug, it does not meet the definition of a part D drug and is excluded from coverage under the Plan.

We have considered the appellant's contention that the drug is necessary for treatment of their diagnosis. Exh. MAC-1. The Council also acknowledges the appellant's argument that they are unable to afford the compound. *Id.* However, our analysis in this case is not based on the medical necessity of the compounded drug for the appellant. We do not question the efficacy of this drug in helping treat the appellant's condition or improve their quality of life. Nor do we question the medical judgment of the appellant's physician in prescribing the drug. However, we reiterate that neither the ALJ nor the Council can circumvent applicable law, which does not allow for Part D coverage of the drug at issue, because bulk powders, as well as compounded products as a whole, are explicitly excluded from the Part D drug benefit. *See* 42 C.F.R. § 423.2063(a) (providing that all laws and regulations pertaining to the Medicare program are binding on ALJs and the Council). Thus, the ALJ and the Council have no authority to direct a Part D plan to cover a drug that does not qualify as a covered Part D drug.

DECISION

The Council adopts the ALJ's decision. The Plan is not required to cover, the estriol powder, because it does not meet the definition of a Part D drug.

MEDICARE APPEALS COUNCIL

*Vanessa M. Hunte*

Vanessa M. Hunte
Administrative Appeals Judge

Date: December 3, 2024